**Russell HAIRSTON, et al., Plaintiffs,**

**v.**

**PACIFIC–10 CONFERENCE, an unincorporated association, Defendant.**

**No. C93–1763R.**

United States District Court,
W.D. Washington,
at Seattle.

May 20, 1994.

Michael D. Hunsinger, Neubauer & Hunsinger, Seattle, WA, James L. Magee, Graham & Dunn, Seattle, WA, Henry C. Jameson, Jameson Babbitt Stites & Lombard, Seattle, WA, for Russell Hairston, Frank Garcia, Jaime Weindl, Jovan McCoy, Kyle Roberts, Scoreboard Inc., Team Spirit Inc., Graham S. Anderson.

Al VanKampen, Richard J. Wallis, Angela M. Luera, Bogle & Gates, Seattle, WA, for Pacific 10 Conference.

Peter D. Byrnes, Byrnes & Keller, Seattle, WA, for National Collegiate Athletic Ass'n.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on a motion under Fed.R.Civ.P. 12(b)(6) by defendant Pacific 10 Conference to dismiss plaintiffs' complaint. Having reviewed the motion together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. BACKGROUND

Plaintiffs in this case are five student athletes ("the players") on the football team at the University of Washington ("UW"), two

football souvenir sellers who have licensing agreements with the UW, and a holder of a season ticket ("ticket holder") to UW football games.

Defendant Pacific 10 Conference ("Pac–10") is a private voluntary association of ten universities from the western United States, including the UW. The purpose of the association is to establish an athletic program, administer intercollegiate athletic events, and stage conference tournaments. The Pac–10 is in turn a member of the National Collegiate Athletic Association ("NCAA"), a national association of universities and colleges which supervises, promotes, and sanctions athletic competition among its members. Both the Pac–10 and the NCAA promulgate and enforce rules governing the conduct of their members' athletic programs.

In August of 1993, the Pac–10 assessed penalties against the UW for infractions of NCAA rules governing the conduct of the football program. The penalties consisted of a ban for one year on receiving revenue from television coverage of football games and other sanctions lasting two years, including a probationary period, a ban on participation in bowl games, and a reduction in the number of available scholarships and permitted recruiting visits.

Plaintiffs brought this lawsuit alleging that the true purpose of the penalties was not to punish rules infractions, but to cripple the UW's ability to compete against the rest of the universities belonging to the Pac–10. Plaintiffs accordingly seek damages and injunctive relief on a variety of claims including violation of federal antitrust laws pursuant to the Sherman Act, 15 U.S.C. §§ 1, 4 and 16; the Washington Consumer Protection Act, RCW 19.86.020 and –.030; breach of contract; tortious interference with a business expectancy; and deprivation of state constitutional due process guarantees.

The Pac–10 now moves to dismiss all of plaintiffs' claims on numerous grounds.

## II. LEGAL ANALYSIS

### A. STANDARD FOR MOTIONS TO DISMISS

■ The Pac–10 moves to dismiss under Fed.R.Civ.P. 12(b)(6). In considering such motions, the court construes the complaint in the light most favorable to the plaintiff and takes its allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Brian Clewer, Inc. v. Pan American World Airways, Inc.*, 674 F.Supp. 782, 785 (C.D.Cal.1986). The court, however, still examines whether the allegations in the complaint follow from the description of the facts alleged by the plaintiff. *See Clewer*, 674 F.Supp. at 785.

### B. CONSTITUTIONAL STANDING

■ The Pac–10 first argues that plaintiffs lack standing to bring suit under Article III of the United States Constitution. The Supreme Court recently summarized the three-part test for determining whether constitutional standing exists: (1) plaintiff must have suffered an injury in fact, *i.e.*, an invasion of a legally protected, particularized, nonhypothetical interest; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, not speculative, that the injury will be remedied by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ The Pac–10 stresses two considerations which it feels plaintiffs fail to meet. First, it contends that plaintiffs are actually asserting the rights and interests of the UW, which was the entity penalized, in order to get relief from a perceived injury to themselves. *See Warth v. Seldin*, 422 U.S. 490, 509, 95 S.Ct. 2197, 2210–11, 45 L.Ed.2d 343 (1975). Plaintiffs do not dispute that they have no standing to assert the UW's claims. *See McCormack v. National Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988). But they insist that they are asserting their own rights based on injuries to their own separately protected interests: the players with their right to compete in a bowl game; the ticket holder with his right to enjoy the unhampered competitiveness of the UW football team; and the souvenir sellers with their right to unfettered sales of football paraphernalia, including bowl game souvenirs. The court concludes that plaintiffs

have alleged their own rights separate and distinct from those of the UW.

Second, the Pac–10 argues that plaintiffs cannot show that their injuries are likely to be redressed by a favorable decision. The relief plaintiffs seek is injunctive relief stopping the Pac–10 from imposing the sanctions and treble damages (except for the ticket holder, who seeks no money damages). The court finds that plaintiffs have shown a sufficient relationship between the alleged injuries and the relief sought to survive this threshold requirement for establishing constitutional standing.

## C. CLAYTON ACT ANTITRUST STANDING—DAMAGES ACTION

■ Section 4 of the Clayton Act allows the recovery of treble damages by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. To bring a private action under § 4, a plaintiff must establish that it has "antitrust standing." It may do so by showing that "it is a proper party to bring a private antitrust action." *Associated Gen. Contractors v. California State Council of Carpenters,* 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 907 n. 31, 74 L.Ed.2d 723 (1983) ("*AGC* "); *see also Blue Shield of Va. v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982). The Supreme Court has listed five factors to be considered in determining if a plaintiff is a proper party to bring suit:

(1) The nature of the plaintiff's claimed injury;

(2) The directness of the injury;

(3) The specific intent of the alleged conspirators;

(4) The character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character; and

(5) The existence of other, more appropriate plaintiffs.

*See AGC,* 459 U.S. at 537–45, 103 S.Ct. at 908–12; *R.C. Dick Geothermal Corp. v. Ther-*

*mogenics Inc.,* 890 F.2d 139, 146 (9th Cir. 1989) (en banc).

■ The first factor, which focuses on whether an "antitrust injury" has been alleged, is a threshold requirement for antitrust standing. *See Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,* 951 F.2d 1158 (9th Cir.1991). If the plaintiff satisfies the requirement of antitrust injury, the court then must examine the other four *AGC* factors. None of those remaining factors controls the decision and "a court may find standing if the balance of factors so instructs." *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 791 F.2d 1356, 1363 (9th Cir.1986), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). It is according to the *AGC* factors that the court analyzes the claims of the players and souvenir sellers in this case.[1]

### 1. *Antitrust Injury*

■ In determining if a plaintiff has alleged an antitrust injury, the courts generally look at whether it is a participant in the same market as the alleged wrongdoer, either as a consumer or as a competitor. *See AGC,* 459 U.S. at 538–39, 103 S.Ct. at 908–09; *Eagle v. Star–Kist Foods, Inc.,* 812 F.2d 538, 540 (9th Cir.1987). The players and souvenir sellers concede that they are not consumers or competitors. They note, however, that the Clayton Act " 'does not confine its protection to consumers, or to purchasers, or to competitors....' " *McCready,* 457 U.S. at 472, 102 S.Ct. at 2545 (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 1006, 92 L.Ed. 1328 (1948)). The Supreme Court stated in *McCready* that "[w]here the injury alleged is so integral an aspect of the conspiracy alleged, there can be no question but that the loss was precisely 'the type of loss that the claimed violations ... would be likely to cause.' " *Id.* at 479, 102 S.Ct. at 2548 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977)). In keeping

---

**1.** The ticket holder seeks injunctive relief and not damages. Therefore, only the standing of the players and souvenir sellers to bring an antitrust damages action is discussed below.

with *McCready*, the courts have allowed suits by plaintiffs who are not consumers or competitors, so long as they allege a direct injury. *See, e.g., Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); *Ostrofe v. H.S. Crocker, Inc.*, 740 F.2d 739 (9th Cir.1984).

In this case, the players have alleged a direct injury. The complaint alleges that the Pac–10 intended to harm both the UW as an institution *and* the UW football team. *See* Compl. at ¶¶ 46–51.[2] The Pac–10, however, insists that any harm was suffered only by the UW. This contention misses the mark. The Pac–10 did *not* limit the sanctions to the UW itself. It also chose to penalize the players by banning them from bowl appearances. The players have thus alleged an antitrust injury for the purposes of a § 4 action.

■ Unlike the players, the souvenir sellers do not allege that they were directly harmed. They instead claim that their harm resulted from the misfortunes of the team, which in turn came about because of the Pac–10's actions. The situation of the souvenir sellers thus parallels that of the travel agents in *Clewer*, who claimed injuries due to the collapse of an airline. *See* 674 F.Supp. 782. In *Clewer*, the court held that those damages were indirect and derivative. Here, the souvenir sellers' injuries are similarly remote. The souvenir sellers, therefore, have failed to meet the threshold requirement of an antitrust injury and may not sue for damages under § 4 of the Clayton Act.[3]

### 2. Directness of the Injury

A direct injury is one close in the "chain of causation" to the violation. *AGC*, 459 U.S. at 540, 103 S.Ct. at 909–910. In this case, the players allege that the Pac–10's antitrust violations directly deprived them of the right to compete in a bowl game. The Pac–10 argues that this injury is derivative of the injury to

the UW and thus too remote. It analogizes the players to employees of the UW and cites cases denying antitrust standing to employees of an allegedly injured employer. *See, e.g., Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 528 n. 5, 111 S.Ct. 913, 920 n. 5, 112 L.Ed.2d 1125 (1991); *AGC*, 459 U.S. at 540–41, 103 S.Ct. at 909–10; *Eagle*, 812 F.2d at 541–42 (9th Cir. 1987); *Exhibitors' Serv., Inc. v. American Multi–Cinema, Inc.*, 788 F.2d 574, 579 (9th Cir.1986). Yet in each of those cases there was only harm to the employer, from which the employees' harm derived. Because the players have alleged their own direct injuries, apart from those of the UW, the "derivative harm" cases cited by the Pac–10 are distinguishable and they do not weigh against a finding of antitrust standing in this case.[4]

### 3. Specific Intent of the Alleged Conspirators

The Pac–10 argues that this factor weighs against standing for the players. It relies on cases which state that the specific intent to harm a competitor does not constitute a specific intent to harm the competitor's employees. Reply in Supp. of Def.'s Mot. to Dismiss at 6. As noted above, those cases are distinguishable because they each involve claims of *derivative harm*. Here, the players have claimed *direct harm*. Therefore, they have alleged a specific intent by a conspirator, the Pac–10.

### 4. Character of the Damages

■ The Pac–10 asserts that the "highly speculative" character of the players' alleged damages weighs against standing. *See* Mem. in Supp. of Def.'s Mot. to Dismiss at 13–14. It is true that the players' damages for the 1994 season are somewhat speculative, since the season has not yet begun. The damages for the 1993 season, however, may be calcu-

---

2. As plaintiffs note, the UW football team and the players cannot logically be separated from one another. Pls.' Mem. in Opp. to Mot. to Dismiss at 14.

3. The court's holding makes it unnecessary to analyze the claims of the souvenir sellers under the remaining *AGC* factors.

4. The more analogous case here is *Ostrofe*, where the court held that an employee had antitrust standing because he was a direct victim of a conspiracy to restrain interstate trade and commerce. 740 F.2d at 742–43.

lated with more precision. The 1993 record of the team indicates that it would have been invited to a bowl; thus, the players' claimed loss of the benefits associated with playing in a bowl game (airfare, hotel expenses and the like) "can be ascertained to the penny." *McCready*, 457 U.S. at 475, 102 S.Ct. at 2546.

The Pac–10 further insists that the players' damages are duplicative of the harm suffered by the UW and that calculating the amount would entail complex apportionment. Mem. in Supp. of Def.'s Mot. to Dismiss at 14. The court is not persuaded that those problems are present here. The players' damages are limited to benefits that non-players cannot claim. Moreover, separating those damages from the losses of the UW would not be difficult. In all, the damages calculation in this case will not lead to what the Supreme Court feared, which was "complicated proceedings involving massive evidence and complicated theories." *AGC*, 459 U.S. at 544, 103 S.Ct. at 911.

#### 5. *Existence of Other, More Appropriate Plaintiffs*

■ The Pac–10 contends that the UW is a more appropriate party to bring suit because it has the "most important stake" involved. Mem. in Supp. of Def.'s Mot. to Dismiss at 9. Even if this claim were true, the existence of another possible plaintiff does not automatically mean that other parties should be denied standing. In *AGC*, the Supreme Court was concerned about the vindication of the public interest by private antitrust enforcement. The Court emphasized that denying standing to the more remote party in that case was "not likely to leave a significant antitrust violation undetected or unremedied." *AGC*, 459 U.S. at 542, 103 S.Ct. at 911; *see also Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1163–64 (9th Cir.1991) (noting that the purpose of the "more appropriate plaintiff" analysis is to ensure that antitrust violations will be identified and remedied), *cert. denied*, 504 U.S. 913, 112 S.Ct. 1947, 118 L.Ed.2d 552 (1992). The plaintiffs have pointed out that the UW has strong incentives not to sue the Pac–10. *See* Pls.' Mem. in Opp. to Mot. to Dismiss at 16. If the

players were denied standing to bring suit, any antitrust violation would go unremedied.

■ On balance, the *AGC* factors weigh in favor of antitrust standing for the players. They have alleged a direct, antitrust injury and a specific intent to harm them. Most of their damages are readily calculable and not speculative. Finally, denying standing to the players might frustrate the detection and punishment of an antitrust violation. For these reasons, the court finds that the players have standing to sue under § 4.

#### D. *CLAYTON ACT ANTITRUST STANDING—INJUNCTIVE RE-LIEF*

■ The requirements for standing when a plaintiff seeks injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26, are less stringent than when it requests damages under § 4. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n. 6, 107 S.Ct. 484, 490 n. 6, 93 L.Ed.2d 427 (1986). Plaintiffs still must show, however, that: (1) they have alleged an antitrust injury; (2) their injury is cognizable in equity; and (3) their injury is the proximate result of the alleged antitrust violation. *See id.* at 111, 107 S.Ct. at 490; *Lucas v. Bechtel Corp.*, 800 F.2d 839, 847 (9th Cir.1986); *Justice v. National Collegiate Athletic Ass'n*, 577 F.Supp. 356, 375 (D.Ariz. 1983). The allegation of antitrust injury is a threshold requirement. *Cargill*, 479 U.S. at 111, 107 S.Ct. at 490.

#### 1. *Antitrust Injury*

■ The same analysis for claimed antitrust injuries under § 4 applies to § 16. *See id.* at 113, 107 S.Ct. at 491 (noting that § 4 and § 16 are complementary remedies for the same injuries). Thus, even though the players are not competitors with the Pac–10 or consumers of the product, they have alleged an antitrust injury for the purposes of § 16 by claiming that they were direct victims of the violations. By contrast, the souvenir sellers have not alleged the required antitrust injury because they have not claimed to be either consumers, competitors, or direct victims. Under *Cargill*, the souvenir sellers have failed to meet an essential element for § 16 standing.

2. *Cognizability in Equity and Proximate Cause*

■ Plaintiffs asking for equitable relief must demonstrate that there is a significant threat of irreparable injury. *Lucas,* 800 F.2d at 847. Allegations of monetary damages alone will not suffice for a showing of irreparable harm. *Id.* In this case, the ticket holder alleges only monetary damages. Thus, he has failed to demonstrate a significant threat of irreparable injury and is not a proper party to sue for injunctive relief under § 16.[5]

■ While the losses of the players for the 1993 season may also be reduced to a monetary figure, their claims regarding the right to attend a bowl game in 1994 cannot be quantified. The latter are cognizable in equity. In addition, the players' allegations meet the proximate cause prong. Courts use the proximate cause test to ensure that injunctive relief, if granted, will prevent the injury from occurring. *Justice,* 577 F.Supp. at 377. The threatened injury here may be redressed by injunctive relief.

In sum, the souvenir sellers and the ticket holder lack standing to sue under § 16 because they have failed to fulfill one of the three required elements. The players, on the other hand, have met all the requirements. As a result, they have standing to sue for injunctive relief under § 16 of the Clayton Act.

E. *WASHINGTON CONSUMER PROTECTION ACT CLAIMS*

1. *Antitrust Claims Under RCW 19.86.020 and –.030*

■ Plaintiffs bring suit under RCW 19.86.030 of the Washington Consumer Protection Act ("CPA"), which prohibits contracts or conspiracies in restraint of trade. This provision is the state equivalent of the Sherman Act § 1, 15 U.S.C. § 1. Plaintiffs also allege claims under the portion of RCW 19.86.020 prohibiting unfair methods of competition. That provision is equivalent to Section 5(a)(1) of the Federal Trade Commission

Act, 15 U.S.C. § 45(a)(1), which prohibits conduct in violation of Sherman Act §§ 1 and 2. *Seven Gables Corp. v. Sterling Recreation Org. Co.,* 1987–1 Trade Cas. ¶ 67,637 at 60,-826 n. 28, 1987 WL 56622 (W.D.Wash.1987).

The state courts look to federal precedent in applying these analogous state statutes. *See, e.g., Consol. Dairy Prod. Co. v. Bar–T Ranch Dairy, Inc.,* 97 Wash.2d 167, 179, 642 P.2d 1240 (1982), in which the Washington Supreme Court used the then applicable federal "target area" standing analysis in considering claims brought under RCW 19.86.020 and –.040. *See also* RCW 19.86.020, which provides that it is the legislature's intent to have state courts be guided by federal decisions interpreting the federal statutes on similar matters.

Applying the federal standards set forth above for determining the existence of standing to plaintiffs' claims under RCW 19.86.030 and the unfair methods of competition provision of RCW 19.86.020, the court concludes that the same result must be reached. The claims brought by the souvenir sellers and ticket holder must be dismissed for lack of antitrust standing. Because the players have established antitrust standing, the Pac–10's motion to dismiss their claims under RCW 19.86.030 and the unfair methods of competition provision of RCW 19.86.020 must be denied.

2. *Failure to Allege Elements of RCW 19.86.020 Violation*

■ In addition to alleging a cause of action under the unfair methods of competition portion of RCW 19.86.020, plaintiffs also allege that the Pac–10 violated that portion of the statute prohibiting unfair or deceptive acts or practices. In order to prove the latter claim, plaintiffs must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training*

---

**5.** This holding is dispositive of the ticket holder's claim that he has standing. *See Lucas,* 800 F.2d at 847. It is not necessary, therefore, for the court to consider the issues of antitrust injury and proximate cause as to the ticket holder.

*Stables v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986).

Regarding the first element, plaintiffs allege that the Pac–10 failed to administer its own rules in good faith and to comply with NCAA rules. The court concludes that plaintiffs do not allege the kind of misleading or fraudulent behavior which RCW 19.86.020 was intended to reach. Therefore, plaintiffs have failed to state a cause of action under that portion of the statute.

## F. *THIRD–PARTY BENEFICIARY CONTRACT CLAIM*

The players allege breach of contract claims based on the theory that they are third-party beneficiaries of a contract between the Pac–10 and its member institutions. This allegation is based on some language in the contract stating that the purpose of the Pac–10 is to provide its student athletes with "quality competitive opportunities" and to conduct its affairs so as to enrich the athletic and academic experiences of its student athletes.

■ In order to create a third-party beneficiary contract, the parties must intend that the promisor assume a direct obligation to the third party, and that performance of that obligation necessarily benefits that party. *Postlewait Constr., Inc. v. Great American Ins.,* 106 Wash.2d 96, 99–101, 720 P.2d 805 (1986). Thus, one does not qualify as a third-party beneficiary of a contract merely because one is an incidental beneficiary of the performance of a contract or because the promisor had a general desire to advance the interests of a third party. *Id.* As *Postlewait* holds, "the key is not whether the contracting parties had an altruistic motive or desire to benefit the third party, but rather, 'whether performance under the contract would *necessarily* and *directly* benefit that party.'" *Id.* at 99, 720 P.2d 805 (quoting *Lonsdale v. Chesterfield,* 99 Wash.2d 353, 361, 662 P.2d 385 (1983)). *See also Del Guzzi Constr. v. Global Northwest,* 105 Wash.2d 878, 887, 719 P.2d 120 (1986), in which the court held that the mere fact that a construction project required minority participation in order to receive federal funding did not manifest an intent by the county or the general contractor to assume a direct legal obligation to the minority subcontractor.

■ The court concludes that the players have failed to state a cause of action for breach of contract on a third-party beneficiary theory. The only evidence before the court consists of vague, hortatory pronouncements in the contract between the Pac–10 and its member schools. By themselves, these pronouncements are not sufficient to support the players' claims that the Pac–10 intended to assume a direct contractual obligation to every football player on a Pac–10 team.

## G. *TORTIOUS INTERFERENCE WITH SOUVENIR SELLERS' CONTRACTS*

The souvenir sellers allege that the Pac–10 intentionally interfered with their business expectancies involving future sales of UW souvenirs and bowl products. The court agrees with the Pac–10 that the souvenir sellers have failed to state a claim.

■ In order to qualify as tortious, the alleged interference must be intentional, not merely an incidental, indirect result of another act. *Pleas v. City of Seattle,* 112 Wash.2d 794, 804, 774 P.2d 1158 (1989); *Titus v. Tacoma Smeltermen's Union Local No. 25,* 62 Wash.2d 461, 465, 383 P.2d 504 (1963); *Restatement (2d) of Torts,* §§ 766, 766B, 767. In this case, the souvenir sellers themselves admit that they "do not contend that the Pac 10 set out to harm the business plaintiffs, though that harm was an inevitable consequence of its acts." Pls.' Mem. in Opp. to Mot. to Dismiss at 14. In other words, the souvenir sellers acknowledge that any harm they suffered was an incidental, indirect result of the Pac–10's decision to assess penalties against the UW. These circumstances cannot support a cause of action for tortious interference with a business expectancy.

## H. *THE PLAYERS' STATE CONSTITUTIONAL CLAIMS*

■ In order to establish their state constitutional claims for deprivation of due process, the players must establish that state action deprived them of a constitutionally

protected right or property interest without due process. *Kuehn v. Renton School Dist.,* 103 Wash.2d 594, 598, 694 P.2d 1078 (1985).

On the issue of whether state action is involved, *NCAA v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), is dispositive. In that case, the Supreme Court held that the NCAA's disciplinary action against a state university did not constitute state action. The players' efforts to distinguish *Tarkanian* are unavailing. Moreover, the court finds that the players have failed to show that they were deprived of any constitutionally protected right or property interest. Their hopes and expectations of participating in a bowl game do not constitute the sort of entitlement required to support a constitutional claim. *See, e.g., Parish v. NCAA,* 506 F.2d 1028, 1034 (5th Cir.1975); *Hawkins v. NCAA,* 652 F.Supp. 602, 610 (C.D.Ill.1987).

### III. CONCLUSION

Defendant's motion is GRANTED in part and DENIED in part. All of plaintiffs' claims are dismissed with the exception of the players' federal antitrust claims and their state claims under RCW 19.86.020 and –.030. As to those claims, the court finds that the players have stated a cause of action as to which relief could be granted.