STATE of Wisconsin EX REL., JOURNAL/SEN-TINEL, INC., a Wisconsin corporation, and Bruce Gill, Plaintiffs-Appellants,

v.

Ronald E. PLEVA, James A. McCann, Lyle A. Stern, William R. Drew, Frederick Stratton, James L. Roberts, G. Frederick Kasten, Jr., and Milwaukee World Festival, Inc., Defendants-Respondents. †

Court of Appeals

*No. 88-1808. Submitted on oral argument May 8, 1989.— Decided July 12, 1989.*

(Also reported in 445 N.W.2d 689.)

†Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the briefs of *Meissner & Tierney, S.C.,* by *Susan J. Marguet* and *Dennis L. Fisher,* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Quarles & Brady,* by *L.C. Hammond, Jr.* and *Jeffrey O. Davis,* of Milwaukee.

Before Moser, P.J., Sullivan and Nettesheim, JJ.

MOSER, P.J.   The Journal/Sentinel, Inc. (Sentinel) and Bruce Gill (Gill) appeal from a judgment dismissing their claims against Milwaukee World Festival, Inc. (Festival) and seven of its finance committee members. We conclude that through the decision of its finance committee to close certain budget-planning meetings pursuant to sec. 19.85(1)(e), Stats., Festival violated its lease agreement with the City of Milwaukee (City). The lease requires Festival to open its meetings to the public, pursuant to the Wisconsin Open Meetings Law, secs. 19.81–19.98, Stats., and we hold that there is no basis for Festival's blanket approach in closing said budget-planning meetings. Furthermore, we conclude that by requiring open meetings, the lease evidences a primary purpose of protecting the public interests it affects. Thus, members of the benefited public may be characterized as third-party beneficiaries of the contract, having standing to protect those public interests. Therefore, we reverse the judgment of the trial court, and remand the cause for further proceedings.

Festival is an organization which orchestrates public festivals and events held on the Milwaukee lakefront festival grounds. In December of 1985, Festival entered into a lease agreement with the City, whereby Festival

leased the lakefront property for a rent of one dollar per year plus two percent of the annual net revenue Festival derives from the events and festivals held on the leased land. The lease term is for twenty years, commencing December 31, 1985.

Paragraph 29 of the lease provides as follows: "*By-Laws* FESTIVAL shall, at its 1986 annual meeting, amend its By-Laws in a manner consistent with the letter attached hereto as Exhibit 'F' and shall maintain such amendments in full force and effect during the term of this Agreement." The letter referred to as Exhibit F was written on December 20, 1985, from the president and chairman of Festival to the president of the Milwaukee Common Council. The letter required that Festival amend its bylaws to allow for a board of directors which consisted of twenty-five persons, including six designated City officials. The letter also required that Festival's board meetings be conducted openly according to the dictates of the Wisconsin Open Meetings Law. The required amendments were enacted by Festival on or about April 13, 1986.

The lease also requires Festival to deliver to the city comptroller: yearly audited financial statements; annual budgets; operating or management plans; the minutes of all board and committee meetings; its articles of incorporation and its bylaws. Furthermore, the lease states that the city comptroller has the right to inspect all records "which relate to the operation of Milwaukee World Festivals." It also reserves other rights of the City to control the use and improvement of the lakefront festival grounds.

On December 2, 1987, Festival's finance committee convened to discuss the operating budget for the upcoming year. Festival provided public notice of the meeting, but the notice stated that the meeting would be closed to

the public pursuant to the Open Meetings Law exemption contained in sec. 19.85(1)(e), Stats. A Milwaukee Sentinel (*Sentinel*) reporter and a *Sentinel* attorney appeared at the meeting and objected to its closure. The committee postponed the meeting, and sought legal advice. Through letters from its attorney, Festival was advised that according to sec. 19.85(1)(e), it could hold a closed session "whenever competitive or bargaining reasons require a closed session." The letters suggested that budget discussions involve a review of competitive purchasing and hiring decisions which could not be reviewed in isolation. Thus, the budget discussions could not be broken into specific parts which would allow for open meetings discussing only those issues which do/did not fall within the Open Meetings Law exemption. However, the letters did not suggest that Festival should engage in a blanket approach in closing its budget-planning meetings.

On December 7, 1987, the finance committee reconvened its meeting after posting another public notice, which was much like the first. At that meeting, Gill and the *Sentinel* attorney protested to its closure. Committee members voted to have the session closed, and Gill and the attorney were not allowed to attend.

On December 10, the finance committee reconvened after giving public notice that it might resume a closed budget-planning session to continue its discussions. Again, committee members voted for closure, and Gill and the attorney were barred from admission. In neither instance did the finance committee provide a reasoned basis for its closure decision.

A full Festival board meeting was subsequently held, and it was open to the public. The proposed budget for 1988 was approved, and a printed version of that budget was disseminated to Gill, the *Sentinel* attorney, and

others. Sentinel and Gill sued Festival and the seven finance committee members who were present at the meetings and voted for closure. They alleged that Festival, through its finance committee, had violated the Wisconsin Open Meetings Law, and thus had breached the terms of the Festival/City lease agreement. They brought their claims as third-party beneficiaries of the lease.

Defendants filed a motion to dismiss on April 5, 1988, alleging that plaintiffs lacked standing to sue and had failed to state a claim upon which relief may be granted. Based upon the record and the briefs submitted by the parties, the trial court granted the motion to dismiss in a judgment entered on June 30, 1988. The judgment reflected the court's written decision of June 13, 1988. The court had determined that the basic purpose for the Festival/City lease "is precisely what that term implies." And, "[t]he open meeting provision is incidental to that purpose."

In its decision, the court also held that "[i]f the City had wished to make members of the public third-party beneficiaries of the lease, they could have done so. They did not. It is not up to trial courts to re-write contracts." Furthermore, the court determined that "Milwaukee World Festival, Inc. is not a governmental body as defined in sec. 19.82, Stats., and, further, that the plaintiffs are not third-party beneficiaries under the lease between the City of Milwaukee and Milwaukee World Festival, Inc."

Gill and Sentinel now appeal from the trial court's judgment. Appellants raise the following issues: (1) whether it was proper for the trial court to require that the lease be for the sole benefit of the public in order to confer standing to enforce only the open-meetings provision; (2) whether it was erroneous for the court to

require that the open meetings clause contain a more specific provision for enforcement in order to confer standing upon the public; and (3) whether Festival is properly bound by the Wisconsin Open Meetings Law. Oral argument was heard by this court on May 8, 1989.

## STANDARD OF REVIEW

Our resolution of this case involves an interpretation and application of the terms of a written lease agreement. Construction of the terms of a written contract is generally a question of law, which appellate courts independently review on appeal.[1] When the terms of a contract are plain and unambiguous, the language must be given its plain meaning.[2] A contract is ambiguous if reasonable persons could understand it differently.[3]

According to the Festival/City lease, as altered by the amendments enacted on or about April 13, 1986, Festival's meetings are required to be conducted openly, pursuant to the Wisconsin Open Meetings Law. Said contract provision is clear and unambiguous.

Section 19.81, Stats., provides as follows:

> **Declaration of policy. (1)** In recognition of the fact that a representative government of the American type is dependent upon an informed electo-

[1] See Crown Life Ins. Co. v. LaBonte, 111 Wis. 2d 26, 32, 330 N.W.2d 201, 204 (1983).

[2] Hortman v. Otis Erecting Co., 108 Wis. 2d 456, 461, 322 N.W.2d 482, 484–85 (Ct. App. 1982) (quoting Dykstra v. Arthur G. McKee & Co., 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–03 (Ct. App. 1979)), aff'd, 100 Wis. 2d 120, 301 N.W.2d 201 (1981) (citations omitted).

[3] Jensen v. Janesville Sand & Gravel Co., 141 Wis. 2d 521, 530, 415 N.W.2d 559, 563 (Ct. App. 1987).

rate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.

(2) To implement and ensure the public policy herein expressed, all meetings of all state and local governmental bodies shall be publicly held in places reasonably accessible to members of the public and shall be open to all citizens at all times unless otherwise expressly provided by law.

(3) In conformance with article IV, section 10, of the constitution, which states that the doors of each house shall remain open, except when the public welfare requires secrecy, it is declared to be the intent of the legislature to comply to the fullest extent with this subchapter.

(4) This subchapter shall be liberally construed to achieve the purposes set forth in this section, and the rule that penal statutes must be strictly construed shall be limited to the enforcement of forfeitures and shall not otherwise apply to actions brought under this subchapter or to interpretations thereof.

Exemptions to the Open Meetings Law are provided in sec. 19.85, Stats. Subsection (1)(e) allows for a closed session whenever it involves "[d]eliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session."

Thus, the Festival/City contract provided that Festival meetings be held in accord with the Wisconsin Open Meetings statute, which delineates the procedural requirements for holding open meetings and the exemptions which allow for their closure. Festival properly followed statutory mandates in providing public notice of

its budget-planning meetings,[4] and in voting for their closure.[5] However, while the finance committee carried out a proper vote, it is for the trial court to determine whether or not it provided the public with a reasoned basis for its decision. The record before this court does not reflect the committee's basis for determining that their meetings fell within the exemption delineated in sec. 19.85(1)(e), Stats. Merely stating that the meetings would involve competitive or bargaining issues is a blanket approach in closing such committee sessions. Among the many procedural requisites, the finance committee was required to state the nature of the business to be considered before it closed the budget-planning sessions.[6] On remand, respondents will be required to establish the nature of the items to be discussed in the meetings so as to justify the finance committee's vote for closure.

We conclude that the December, 1987 budget-planning meetings which were held in closed session might have precluded public access to information which was to have been made public, according to the terms of the Festival/City contract. Furthermore, we conclude that by requiring open meetings, the lease evidences a primary purpose of protecting the public interests it affects. In short, the lease addresses a multitude of public interests, including revenue to taxpayers and preserving the integrity of public lands. By attending Festival meetings, members of the public participate in protecting those interests. In our society, the press often acts as an information-gathering member of the public, acting as its

[4] *See* sec. 19.84, Stats.

[5] *See* sec. 19.85(1), Stats.

[6] *See* sec. 19.85(1), Stats.

"eyes and ears."[7] If a contract is entered into "directly and primarily" for the benefit of third parties, then the third parties may recover on that contract.[8] Also, if one of the primary purposes of a contract is to protect third parties then they are beneficiaries under the contract.[9] Therefore, Sentinel and Gill, as benefiting third parties and representatives of the public, have standing to sue under the Festival/City lease.

*By the Court.*—Judgment reversed and cause remanded.

[7] *State ex rel. Newspapers, Inc. v. Showers,* 135 Wis. 2d 77, 81, 398 N.W.2d 154, 156 (1987).

[8] *Winnebago Homes, Inc. v. Sheldon,* 29 Wis. 2d 692, 699, 139 N.W.2d 606, 609 (1966).

[9] *Mercado v. Mitchell,* 83 Wis. 2d 17, 29, 264 N.W.2d 532, 538 (1978).