COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1969**

Cir. Ct. No. **2022CV216**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

JESSE CLUBB,

PLAINTIFF-APPELLANT,

V.

MARINETTE COUNTY, JERRY SAUVE, SHERIFF, BRIAN WRUK, WISCONSIN COUNTY MUTUAL INSURANCE COMPANY AND ARAMARK CORRECTIONAL SERVICES LLC,

DEFENDANTS-RESPONDENTS,

ADVANCED CORRECTIONAL HEALTHCARE, INC., JOHN DOES 1-10, DOCTORS 1-10, NURSES 1-10, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY, GHI INSURANCE COMPANY AND JKL INSURANCE COMPANY,

DEFENDANTS.

---

APPEAL from an order of the circuit court for Marinette County: JEFFREY R. WISNICKY, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Jesse Clubb appeals from an order granting summary judgment in favor of Marinette County, Sheriff Jerry Sauve, corrections officer Brian Wruk, and Wisconsin County Mutual Insurance Company (collectively, the County); Aramark Correctional Services, LLC; and Advanced Correctional Healthcare, Inc. (ACH).    While Clubb was being held in the Marinette County Jail, he suffered an injury to his teeth while he was eating, and, as a result, he filed this lawsuit alleging several tort and contract claims against the above-named defendants.

¶2    On appeal, Clubb argues that the circuit court erred by dismissing his breach of contract claim against Aramark because he insists the contract between Aramark and the County demonstrated an intent to benefit the inmates at the jail, including Clubb, as third-party beneficiaries.    He further asserts that the court erred by dismissing his negligence claim against the County on the basis of governmental immunity, pursuant to WIS. STAT. § 893.80(4) (2023-24),[1] because the County had a ministerial duty to provide him with healthcare.    For the reasons that follow, we reject Clubb's arguments and affirm.

## BACKGROUND

¶3    On September 13, 2018, while Clubb was incarcerated, he allegedly bit down on a hard object in his food.    During this time, the jail contracted with

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Aramark to provide all food services to the inmates. The contract granted Aramark "the exclusive right to provide food service" to "the County's inmates, staff and visitors at the Marinette County Jail," and Aramark "agree[d] to furnish nutritious, wholesome, and palatable food to such inmates, staff and visitors." All food prepared for inmates was made by Aramark employees or by inmate workers overseen by Aramark employees.

¶4 Clubb described the object in his food as a black or brown "hunk of plastic" like the "corner of a cutting board or something." He believed that a portion of one of his teeth broke off when he bit down on the object. According to Clubb, he immediately informed one of the corrections officers about the object, and he may have also requested access to a dentist at that time. The officer advised Clubb to complete a medical request slip to see the nurse.[2]

¶5 Clubb asserted that he submitted four or five medical request slips concerning the injury to his teeth between September 13 and 24, 2018. According to the record, neither the jail nor the Health Services Unit (the HSU) had any record of any medical request slip submitted by Clubb during that period, and the slip that prompted Clubb's first visit with an HSU nurse was undated. That first visit with the HSU nurse occurred on September 24, and on September 27, Clubb submitted another medical request slip. At that time, the jail physician approved

---

[2] The County contracted with ACH to provide healthcare to the inmates. According to the record, if an inmate "verbally complains to a corrections officer of a non-life-threatening injury, condition, or pain, corrections officers are trained to tell the inmate to complete and turn in a medical request slip so that the nursing staff can determine when and how to evaluate the inmate." Further, "[a]ll decisions regarding inmate medical treatment and the need for outside healthcare services are made by qualified healthcare professionals employed by" ACH. When an inmate has a need for dental care, ACH advises the jail administration of that need, and an appointment is made "with the first willing and available provider."

3

Tylenol for Clubb, and the "plan of care" noted that "jail administration [was] aware of dentistry order." The record does not provide information regarding when or how the jail administration became aware of the dentistry order, however.

¶6      Clubb asserts that despite being aware of this dentistry referral, the jail administration did not immediately make a dentist appointment for Clubb. Instead, Clubb saw an HSU nurse again in October, and the nurse submitted a second referral on October 11, 2018. Clubb's dental appointment was finally made on October 15 and scheduled for October 19. At this visit, Clubb was diagnosed with an infection, prescribed antibiotics, and scheduled to have three of his teeth extracted.

¶7      Clubb filed this lawsuit on September 19, 2022,[3] alleging claims in his complaint and an amended complaint against the various defendants for a violation of the prohibition of cruel and unusual punishment under the Wisconsin Constitution; negligence; a violation of WIS. STAT. § 101.11, Wisconsin's safe place statute; negligent failure to train and supervise; breach of contract; and seeking recovery under WIS. STAT. §§ 632.24 and 895.46, the direct action statute and the indemnification statute, respectively.

---

[3] Previously, on November 8, 2020, Clubb filed a lawsuit in the United States District Court for the Eastern District of Wisconsin "alleging that over 40 defendants (both identified and unidentified) violated his federal civil rights, as well as various Wisconsin state laws, in connection with his incarceration at the Marinette County Jail." *Clubb v. Marinette County*, No. 20-C-1683, 2022 WL 22949129, at *1-2 (E.D. Wis. Aug. 24, 2022). The defendants filed motions for summary judgment, and the district court issued a decision and order granting summary judgment to the defendants on all of the federal claims and dismissing them with prejudice. *Id.* at *4-6. Given the dismissal of the federal claims, the district court declined to exercise supplemental jurisdiction over Clubb's state law claims. *Id.* at *5.

¶8     After early dispositive motions, the remaining defendants—the County, Aramark, and ACH—moved for summary judgment on Clubb's remaining claims.   The County alleged, among other things, that Clubb's negligence claim should be dismissed because the County was entitled to discretionary immunity under WIS. STAT. § 893.80(4).[4]   Aramark, for its part, alleged that Clubb's breach of contract claim should be dismissed because Clubb was not a third-party beneficiary of its contract with the County and that his negligence claim should be dismissed because Aramark did not breach any duty of care owed to Clubb.

¶9     The circuit court held a nonevidentiary hearing on the motions and issued an oral ruling.  As relevant to this appeal, the circuit court concluded that although the County may have been negligent in processing the dental referral and scheduling the appointment, Clubb "did receive the appropriate care he's supposed to get that the [County] is supposed to provide."  Therefore, the court determined that Clubb's claims against the County were barred by discretionary immunity under WIS. STAT. § 893.80(4).  The court further concluded that Clubb was not a third-party beneficiary of the contract between Aramark and the County, finding no provision allowing an inmate to sue for breach of that contract.  The court explained that "[t]he primary purpose of this contract is to relieve Marinette County of its duty to provide" food service, and any benefit to the inmates is merely an incidental benefit.

---

[4] By this time, the only claims remaining against the County were negligence and negligent training and supervision.

5

¶10 The circuit court thereafter entered a written order dismissing all remaining causes of action against the County and ACH, dismissing the breach of contract claim against Aramark, and denying summary judgment as to the negligence claim against Aramark. Clubb appeals.

## DISCUSSION

¶11 In this appeal, Clubb requests that we reverse the circuit court's grant of summary judgment to the County and Aramark.[5] First, Clubb asserts that the court erred by dismissing the breach of contract claim against Aramark because the law does not require a specific provision within the contract allowing a third-party beneficiary to sue under the contract. According to Clubb, he needed to show only that the contract was intended to benefit the inmates. Second, Clubb argues that the County is not entitled to immunity for its negligence in this case because it had a ministerial duty to provide healthcare to the inmates.

---

[5] As an initial matter, we note an issue regarding the finality of the order Clubb appealed with regard to Aramark. The general rule is that only a final judgment or order is appealable as a matter of right. WIS. STAT. § 808.03(1). Although the parties have briefed this case as if the circuit court's order is a final judgment as to Aramark, we conclude upon closer examination that the order is not final. The court granted Aramark's motion for summary judgment on Clubb's breach of contract claim, but it denied the motion as to Clubb's negligence claim. Thus, it appears that Clubb's negligence claim against Aramark is still pending, and we conclude that the circuit court's order on summary judgment was nonfinal as to Aramark. As a result, we lack jurisdiction to hear the appeal with regard to Aramark as a matter of right.

Nevertheless, the parties have fully briefed the issues, and we conclude that permitting the appeal to move forward would be fair to the parties, efficient, and would "[m]aterially advance the termination of the litigation or clarify further proceedings in the litigation." *See* WIS. STAT. § 808.03(2)(a). In such cases, we may construe a party's notice of appeal as a petition for leave to appeal and grant that petition. *See Caldwell v. Percy*, 105 Wis. 2d 354, 357 n.3, 314 N.W.2d 135 (Ct. App. 1981); *Leavitt v. Beverly Enters., Inc.*, 2010 WI 71, ¶¶38-39, 326 Wis. 2d 421, 784 N.W.2d 683 (recognizing that the court of appeals has broad discretion to grant or deny leave to appeal). Therefore, we treat Clubb's notice of appeal as a petition for leave to appeal the circuit court's order as to Aramark and, on our own motion, order the petition granted.

¶12    Appellate courts review a summary judgment decision de novo, and we apply the same methodology as the circuit court. ***Beidel v. Sideline Software, Inc.***, 2013 WI 56, ¶33, 348 Wis. 2d 360, 842 N.W.2d 240.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  For the reasons that follow, we affirm the circuit court's order granting summary judgment to the County and Aramark.

## I. Third-Party Beneficiary

¶13    The first issue is whether Clubb was a third-party beneficiary of the contract between the County and Aramark.  To prevail on his claim for breach of contract, Clubb has the burden to prove: "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." ***Brew City Redevelopment Grp., LLC v. Ferchill Grp.***, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582.  At first glance, Clubb's claim immediately fails on the first element because Clubb is undisputedly not a party to the contract between the County and Aramark, there is no contract between Clubb and Aramark, and "[t]he general rule is that only a party to a contract may enforce it." *See **Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.***, 231 Wis. 2d 404, 409, 605 N.W.2d 620 (Ct. App. 1999).

¶14    "However, there is an exception [to that general rule] when the contract was made specifically for the benefit of a third party." ***Id.***  "The person claiming to be a third[-]party beneficiary must show that the contract was entered

into by the parties to the contract *directly and primarily* for the benefit of the third party." ***Schilling v. Employers Mut. Cas. Co.***, 212 Wis. 2d 878, 886-87, 569 N.W.2d 776 (Ct. App. 1997) (emphasis added). Importantly, "[a]n indirect benefit incidental to the contract is not sufficient." ***Id.*** at 887. Instead, "[t]he contract must indicate that the third party either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit." ***Id.*** Here, Clubb alleges that he is a member of a class that the parties intended to benefit—that class being the jail inmates. *See **id.***

¶15 To determine whether the contract between the County and Aramark was entered into by the parties directly and primarily for the benefit of the inmates, we must consider the language of the contract. The interpretation of a contract is a question of law that we review de novo. ***Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.

¶16 Clubb argues that the circuit court erred by "incorrectly conclud[ing] that the [c]ontract had to have a provision allowing a third-party to sue" in order for the third-party beneficiary rule to apply. According to Clubb, "[t]he proper inquiry is analyzing whether the [c]ontract's language shows an intent to provide a group of persons a direct benefit and whether Clubb was a member of that class of person." Clubb identifies what he asserts "is overwhelming language in the [c]ontract that shows the County and Aramark's intent to … benefit the Jail's inmates."

¶17 First, Clubb notes that the contract grants Aramark "the exclusive right to provide food service … for the County's inmates, staff and visitors" at the jail and that Aramark was not relieved of that obligation in the event of a "Force

8

Majeure," meaning a riot or some other occurrence resulting in "work stoppage." Aramark was also required to have "registered dieticians … ensure that the food products meet *inmate* acceptability and nutritional standards." (Emphasis added.) According to Clubb, these references to the inmates "clearly show[] that [the contract] was for the benefit of the [j]ail's inmates."

¶18 Next, Clubb observes that the contract also required Aramark to accommodate "religious requests" for special food. "That provision," argues Clubb, "more likely than not, is for the direct and primary benefit of inmates." Clubb further states that the contract requires Aramark "to accommodate medical nutrition therapy as prescribed by the [j]ail's health care provider." That requirement "shows an intent to directly and primarily benefit inmates because," Clubb explains, it could only be referring to the inmates, not the visitors or staff who are not under the care of the jail's health care provider. Finally, Clubb asserts that the contract identifies the meal prices for the inmate meals but not the staff or visitor meals, which indicates that inmates were the specific class that the contract was meant to benefit. Thus, he asserts, "[b]ecause Clubb showed the [c]ontract intended to benefit … inmates at the [j]ail, and Clubb was a member of that class, Clubb is a third-party beneficiary."

¶19 We agree with the circuit court and Aramark that Clubb was not a third-party beneficiary to the contract between the County and Aramark because any benefit being provided to the inmates under the contract was merely an incidental benefit of the agreement. Clubb has not cited any legal authority from Wisconsin addressing whether an inmate in a jail is considered a third-party beneficiary or otherwise has standing to sue a private entity for an alleged breach of a food service contract, and we have not identified any such authority on our review. Regardless, based on our review of the language of the contract, we

9

conclude that the contract at issue here was not "entered into by the parties … directly and primarily for the benefit of" the inmates. *See Schilling*, 212 Wis. 2d at 887. Clubb's arguments on appeal misunderstand the limited nature of the third-party beneficiary doctrine. He appears to advocate for application of the doctrine where the language of a contract refers to a third party and that third party receives *some* benefit from the contract. Were we to adopt Clubb's understanding of the doctrine, the availability of third-party beneficiary breach of contract claims would be almost limitless.

¶20    As the circuit court found, the contract between the County and Aramark does not explicitly state that the inmates are an intended third-party beneficiary of the contract. At best, the contract refers to the jail and the inmates within some of its terms. The mention of a third party in a contract, on its own, is insufficient to establish third-party beneficiary status. *See Sisney v. State*, 2008 SD 71, ¶10, 754 N.W.2d 639 ("[T]he mention of one's name in an agreement does not give rise to a right to sue for enforcement of the agreement where that person is only incidentally benefited." (citation omitted)). Instead, the contract "must indicate" the "specific[] inten[t]" of the contracting parties "that the contract was entered into … *directly and primarily* for the benefit of the third party." *See Schilling*, 212 Wis. 2d at 887 (emphasis added).

¶21    Here, none of the terms of the contract identified by Clubb establish that the parties entered into the agreement to "directly and primarily" benefit the inmates. Instead, the terms demonstrate that the parties entered into this contract for their own respective benefits. As Aramark noted, the County has a statutory duty to feed the inmates in the jail, *see* WIS. STAT. § 302.37(1)(a); therefore, "[t]he primary purposes" of Aramark and the County's contract "were to ensure the County's compliance with its statutory duties, identify the services Aramark

would provide to the County in furtherance of the County's operation of the [j]ail, and to establish terms and conditions regarding Aramark's compensation for providing the agreed upon services to the County." Clubb and the other inmates, as parties who received the meals contracted for, were merely incidental beneficiaries of the contract, not explicit, intended beneficiaries.

¶22 Because Clubb is neither a party to nor a third-party beneficiary of the contract between the County and Aramark, his claim against Aramark for its alleged breach of the contract fails as a matter of law. We affirm the circuit court's dismissal of this claim.

## II. Negligence

¶23 Clubb's next argument concerns his negligence claim against the County. Before the circuit court, the County raised an immunity defense, under WIS. STAT. § 893.80(4), and the court dismissed this claim on that basis. Section 893.80(4) provides that no action may be brought against a municipality or its employees "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," which our supreme court "has consistently interpreted … to include any acts that involve the exercise of discretion." *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶¶21-22, 385 Wis. 2d 86, 921 N.W.2d 714.

¶24 Governmental immunity is subject to several exceptions, however, which include the following: (1) "the performance of ministerial duties imposed by law"; (2) "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees"; (3) "acts involving medical discretion"; and (4) "acts that are malicious, willful, and intentional." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶24, 253 Wis. 2d 323, 646 N.W.2d 314. Importantly, "[w]e

11

assume negligence for purposes of the immunity defense, and apply the test for immunity and its exceptions to the municipal act alleged to have been negligently performed or omitted." *Id.*, ¶¶17, 19. "The application of the immunity statute and its exceptions involves the application of legal standards to a set of facts, which is a question of law" that we review independently. *Id.*, ¶17.

¶25 In this appeal, Clubb argues that the County was not entitled to governmental immunity because the County had a ministerial duty imposed by law to provide healthcare to inmates within the standard of care. "The ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." *Id.*, ¶25. A ministerial duty is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Engelhardt*, 385 Wis. 2d 86, ¶32 (citation omitted). The "law" imposing a ministerial duty may include "statutes, administrative rules, policies or orders." *Meyers v. Schultz*, 2004 WI App 234, ¶19, 277 Wis. 2d 845, 690 N.W.2d 873. "Whether a duty is discretionary or ministerial is a question of law that we review de novo." *Yao v. Chapman*, 2005 WI App 200, ¶27, 287 Wis. 2d 445, 705 N.W.2d 272.

¶26 According to Clubb, the County—specifically Sheriff Sauve—had "a ministerial duty to provide appropriate medical care and treatment to inmates" pursuant to WIS. STAT. § 302.38.[6] Therefore, he argues, the circuit court erred by

---

[6] WISCONSIN STAT. § 302.38(1) provides, in pertinent part, as follows:

(continued)

granting summary judgment to the County because the "court found that [the sheriff] negligently performed a ministerial duty," this court "must accept the circuit court's findings of fact unless they are clearly erroneous," and "discretionary immunity does not protect the negligent performance[] of a ministerial duty."[7] *See Brown v. Acuity*, 2013 WI 60, ¶43, 348 Wis. 2d 603, 833 N.W.2d 96 ("If liability is premised on either the negligent performance or non-performance of a ministerial duty, then immunity will not apply.").

¶27    We conclude that the County is entitled to immunity for Clubb's negligence claim.  Initially, we reiterate that our review assumes negligence.  The parties dedicate a substantial portion of their briefing to the factual details of the case and to what the appropriate standard of care would have been.  The

---

> If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol or another drug the sheriff, superintendent or other keeper of the jail or house of correction shall provide appropriate care or treatment and may transfer the prisoner to a hospital or to an approved treatment facility under [WIS. STAT. §] 51.45(2)(b) and (c), making provision for the security of the prisoner.

Going forward, for ease of reading, we will refer only to "the sheriff" as the entity that is required to provide the appropriate care or treatment to the inmates.

[7] The County argues that Clubb "misrepresents the record in claiming that the [c]ircuit [c]ourt found that Sheriff Sauve negligently performed a ministerial duty."  We agree with the County.  While the court found that "there was some negligent behavior," it stated "that [the County] did meet their ministerial duty of providing appropriate care."  While the court called the duty to provide healthcare a "ministerial duty," it also determined that the manner and mode of providing the care was discretionary and that immunity applied.  The court, therefore, did not find that the sheriff negligently performed a ministerial duty.

As we explain in more detail below, the County was required to provide healthcare, but the decisions regarding whether healthcare is necessary and when and how to provide it are not ministerial.  Thus, the County did not have a *ministerial duty* to provide healthcare to the inmates.  Regardless, we may affirm the circuit court on other grounds.  *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78.

particulars of what occurred, how Clubb was eventually provided healthcare, and whether the County complied with the standard of care or was negligent—including any delay in providing healthcare—are not relevant to our review *on immunity grounds*. Again, we assume the County was negligent. Furthermore, our review on summary judgment, whether an exception to immunity applies, and whether a duty is discretionary or ministerial all present questions of law for our independent review. *See **Beidel***, 348 Wis. 2d 360, ¶33; ***Lodl***, 253 Wis. 2d 323, ¶17; ***Yao***, 287 Wis. 2d 445, ¶27.

¶28 Beyond those points, Clubb's arguments on appeal all flow from the incorrect premise that WIS. STAT. § 302.38 imposes a *ministerial* duty. Stated plainly, it does not. As we have stated numerous times before, "[n]ot all duties are ministerial—to the contrary, 'for a duty to be ministerial, a public officer must be not only bound to act, but also bound by law to act in a very particular way[.]'" *See **Knoke v. City of Monroe***, 2021 WI App 6, ¶46, 395 Wis. 2d 551, 953 N.W.2d 889 (2020) (citing ***Yao***, 287 Wis. 2d 445, ¶29). Thus, we must review § 302.38 "to evaluate whether the duty and its parameters are expressed so clearly and precisely, so as to eliminate the official's exercise of discretion," *see **Pries v. McMillon***, 2010 WI 63, ¶26, 326 Wis. 2d 37, 784 N.W.2d 648, and whether the statute "prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion," *see **Engelhardt***, 385 Wis. 2d 86, ¶32 (citation omitted).

¶29 Based on the plain language of WIS. STAT. § 302.38, which merely requires a sheriff to "provide appropriate care or treatment," we conclude that the statute outlines a discretionary duty, not a ministerial one. *See **Willow Creek Ranch, L.L.C. v. Town of Shelby***, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693 ("A discretionary act involves the exercise of judgment in the

application of a rule to specific facts."); ***Patterson v. Hepp***, No. 16-CV-942, 2017 WL 3261715, at \*12 (E.D. Wis. July 31, 2017), *aff'd*, 722 F. App'x 585 (7th Cir. 2018) ("In contrast to ministerial tasks, discretionary acts require a public official to determine how a general policy should be carried out or how a general rule should be applied to a specific set of facts."). There is no language within § 302.38 outlining a sheriff's duty to act with such specificity that nothing remains for judgment or discretion; the statute leaves discretion entirely in the sheriff's hands as to whether care and/or treatment is appropriate, and if so, when and how to provide inmates that care and/or treatment. Said another way, while the sheriff had a *duty* to comply with § 302.38, because no law "defines the time, mode and occasion for [the sheriff's] performance" of that duty, *see **Engelhardt***, 385 Wis. 2d 86, ¶32, § 302.38 does not impose a *ministerial duty*. Thus, contrary to Clubb's claim, even assuming that the sheriff was negligent, he did not negligently perform a ministerial duty.

¶30    Clubb, however, cites ***Swatek v. County of Dane***, 192 Wis. 2d 47, 531 N.W.2d 45 (1995), in support of his argument, stating that "the Wisconsin Supreme Court held that the requirement [in WIS. STAT. § 302.38] to 'provide appropriate care or treatment' is a ministerial duty." *See **id.*** at 58-59; *see also **Meriter Hosp. v. Dane County***, 2004 WI 145, ¶25, 277 Wis. 2d 1, 689 N.W.2d 627 (stating that § 302.38 is mandatory on sheriffs).[8] In ***Swatek***, William Swatek

---

[8] To the extent Clubb is suggesting that a mandatory duty necessarily imposes a ministerial duty, we disagree. While "the choice of discretionary versus mandatory language is a significant factor in determining the existence of a ministerial duty," ***Pries v. McMillon***, 2010 WI 63, ¶30, 326 Wis. 2d 37, 784 N.W.2d 648, a governmental entity may have a mandatory duty but still have discretion or judgment as to the time, mode, or manner in which that duty is to be performed, *see **Yao v. Chapman***, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272 ("[F]or a duty to be ministerial, a public officer must be not only bound to act, but also bound by law to act in a very particular way, leaving nothing for judgment or discretion."). Thus, mandatory and ministerial are neither synonymous nor mutually exclusive.

was booked into jail while he was suffering from appendicitis, but he was not taken to the hospital. *Swatek*, 192 Wis. 2d at 52-55. Swatek filed suit against the jail officials, arguing that they were negligent "in the handling of the situation." *Id.* at 55.

¶31 *Swatek* did not hold that the duty to "provide appropriate care or treatment" is a ministerial duty, as Clubb states, because *Swatek* was not a governmental immunity case and the words "ministerial duty" do not appear anywhere in the decision. The *Swatek* court outlined that the word "appropriate" in WIS. STAT. § 302.38(1) means "especially suitable, fitting or proper," which Clubb seizes upon to claim that "[a]lthough the sheriff has discretion on 'how' they provide that care," "discretionary immunity only protects a sheriff if his actions were 'especially suitable, fitting or proper.'" *See Swatek*, 192 Wis. 2d at 59, 61.

¶32 What our supreme court actually stated in *Swatek* was: "We conclude that the unambiguous language of [WIS. STAT. §] 302.38(1) mandates that although prisoners must be provided appropriate medical care or treatment when necessary, sheriffs or other jail keepers have discretion as to how to provide that care or treatment." *Swatek*, 192 Wis. 2d at 52; *see also Estate of Fiebrink v. Armor Corr. Health Servs.*, No. 18-CV-832, 2019 WL 1980625, at *13 (E.D. Wis. May 3, 2019) (citing *Swatek* in support of the proposition that "custodial officials have a duty to carry out their jobs according to the constitution and the legislation of [the government body], but a mandate to follow the law does not necessarily give rise to a ministerial duty"). Thus, *Swatek* does not support Clubb's position.

¶33 Clubb further asserts that "a ministerial duty can be found even if the 'time, mode, and occasion for its performance' is not fully defined or imposed by law." In support of that proposition, he cites *Legue v. City of Racine*, 2014 WI 92, ¶¶52-53, 357 Wis. 2d 250, 849 N.W.2d 837, and *Cavanaugh v. Andrade*, 202 Wis. 2d 290, 300-02, 550 N.W.2d 103 (1996). In *Legue*, a collision occurred between the plaintiff and a police officer responding to an emergency call at an accident scene. *Legue*, 357 Wis. 2d 250, ¶2. Based on WIS. STAT. § 346.03(5) (2011-12), which imposes a duty on officers to operate an authorized emergency vehicle "with due regard under the circumstances for the safety of all persons," our supreme court concluded that the officer's actions were "outside the scope of the immunity statute." *Legue*, 357 Wis. 2d 250, ¶¶6, 133. Specifically, the court explained that "[t]oday's holding is in keeping with sister state jurisdictions with statutes similar to Wisconsin's that view the operation of a vehicle as a paradigmatic ministerial act. These jurisdictions tend to hold that immunity does not attach to negligent operation on the part of an emergency vehicle operator." *Id.*, ¶134 (footnotes omitted).

¶34 *Legue* relied on and discussed *Cavanaugh*, which also involved an officer-driven vehicle collision. *Cavanaugh*, 202 Wis. 2d at 296. Our supreme court concluded that WIS. STAT. "§ 346.03(5) [(1993-94)] does not preclude the defense of immunity for the discretionary acts of initiating or continuing a high-speed pursuit," and the court distinguished between a discretionary decision to pursue a suspect and a ministerial obligation to "physically operate" a vehicle with "due regard under the circumstances for the safety of all persons." *Cavanaugh*, 202 Wis. 2d at 316-17.

¶35 *Legue* and *Cavanaugh* are distinguishable. First, the cases are distinguishable on the material facts because they examined the narrow issue of

17

whether the statutory obligation to operate emergency vehicles with "due regard under the circumstances for the safety of all persons" created a ministerial duty. This case does not involve emergency vehicles or WIS. STAT. § 346.03(5), and Clubb does not explain how the statute and the factual circumstances here are similar to those in *Legue* and *Cavanaugh* such that we should extrapolate the holdings in those cases and apply them here. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Further, the definition of a ministerial duty is clearly articulated in the case law as a duty that is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Engelhardt*, 385 Wis. 2d 86, ¶32 (citation omitted). Nothing in the court's holdings in *Legue* or *Cavanaugh* modifies or limits that definition.[9]

¶36    Therefore, because we conclude that WIS. STAT. § 302.38(1) merely establishes that the County has a duty to provide appropriate care to inmates, if necessary, and did not impose a ministerial duty on the County in this case, the

---

[9] Clubb also cites *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶¶59-60, 385 Wis. 2d 86, 921 N.W.2d 714, for his proposition that "the mere existence of some discretion is not sufficient 'to bring the actions under the blanket of immunity provided by [WIS. STAT.] § 893.80(4).'" *Engelhardt* involved a drowning at a community pool during a field trip run by the New Berlin Parks and Recreation Department. *Engelhardt*, 385 Wis. 2d 86, ¶2. We need not delve into the details of that case, however, because the court found that drowning was a known danger under the circumstances that created a ministerial duty for the camp staff to have given the child a swim test before allowing her near the pool. *Id.*, ¶6. In other words, the case did not involve the performance of ministerial duties *imposed by law*. While the ministerial duty and the known danger exceptions "overlap to an extent, inasmuch as they both require the identification of a ministerial duty," *Pries*, 326 Wis. 2d 37, ¶24, Clubb does not explain why we should apply the court's reasoning in a known danger exception case to a ministerial duty exception case.

County is entitled to immunity pursuant to WIS. STAT. § 893.80(4). Accordingly, we affirm the circuit court's order granting summary judgment to the County.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.