STATE of Wisconsin EX REL.
CITIZENS FOR RESPONSIBLE DEVELOPMENT,
State of Wisconsin ex rel. Kathryn Bornemann,
and State of Wisconsin ex rel.
George Bornemann,
Petitioners-Appellants,

STATE of Wisconsin EX REL. Stephen DREW and
State of Wisconsin ex rel. Leanne G. Glorvigen,
Petitioners,

v.

CITY OF MILTON and Milton City Council,
Respondents-Respondents,

MILTON PLAN COMMISSION,
Respondent.

Court of Appeals

*No. 2006AP427. Submitted on briefs December 12, 2006.
—Decided March 8, 2007.*

2007 WI App 114

(Also reported in 731 N.W.2d 640.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Christa Westerberg* and *Peter E. McKeever* of *Garvey, McNeil & McGillivray, S.C.*, Madison.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Michael R. Haas* of *Roethe Krohn Pope LLP*, Edgerton.

A nonparty brief was filed by *Robert J. Dreps* and *Jennifer L. Peterson* of *LaFollette Godfrey & Kahn*, Madison, for Wisconsin Freedom of Information Council, Wisconsin Broadcasters Association, Wisconsin Newspaper Association and *The Janesville Gazette*.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. DYKMAN, J. Citizens for Responsible Development (CRD) appeals from an order granting summary judgment to the City of Milton, the Milton City Council, and the Milton Plan Commission (collectively "Milton") in CRD's action against Milton for violation of Wisconsin's Open Meetings Law under WIS. STAT. §§ 19.81–19.98 (2005–06).[1] CRD contends that Milton improperly invoked WIS. STAT. § 19.85(1)(e) as justifica-

---

[1] CRD also alleged Milton violated Wisconsin's Open Records Law and challenged Milton's approval of a conditional use permit. Only the Open Meetings Law violation is before us in this appeal.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

tion for holding ten closed meetings to discuss and negotiate an agreement to develop an ethanol plant in Milton. We agree, and conclude that Milton applied an overly broad interpretation of § 19.85(1)(e) when it closed the entirety of its meetings concerning the proposed ethanol plant, and therefore violated Wisconsin's Open Meetings Law.[2]

## Background

¶ 2. The following facts are uncontested. Milton held ten closed meetings between June 2004 and February 2005 concerning United Cooperative, L.L.C.'s interest in building an ethanol plant in Milton. The minutes from the closed sessions reflect discussions about negotiating with United Coop to build an ethanol plant in Milton, negotiating to purchase land from Doug Goodger as a site for the plant, possible problems associated with having an ethanol plant in the community, and other possible projects for Milton's Industrial Park. At the final meeting, Milton approved a Developer's Agreement between Milton and United Coop.

¶ 3. After the plans for an ethanol plant in Milton became public, CRD brought this open meetings action, alleging Milton had violated Wisconsin's Open Meetings Law by holding all its meetings regarding the possible development of an ethanol plant in closed session.[3]

---

[2] Because we conclude that Milton was not justified under WIS. STAT. § 19.85(1)(e) in closing the entirety of its discussions concerning the proposed ethanol plant, we need not reach CRD's second argument, that the closed meetings were improperly noticed.

[3] A private party may bring an action for violation of the Open Meetings Law under WIS. STAT. § 19.97(4) when, as here,

Both parties moved for summary judgment. The court granted Milton's motion as to the Open Meetings Law claim, and CRD appeals.

## Standard of Review

¶ 4.   We review an order granting summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

¶ 5.   This case requires us to interpret Wisconsin's Open Meetings Law and its application to the facts of this case, also questions of law we review de novo. *See State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 70, 508 N.W.2d 603 (1993). Because both parties moved for summary judgment and neither disputes the material facts, those facts are effectively stipulated and only questions of law are before us on appeal. *See Eichenseer v. Madison-Dane County Tavern League, Inc.*, 2006 WI App 226, ¶ 3, 297 Wis. 2d 495, 725 N.W.2d 274.

## Discussion

¶ 6.   Under Wis. Stat. § 19.81(2), "all meetings of all state and local governmental bodies shall be publicly

the district attorney refuses to commence an open meetings action. *See State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 74–75, 508 N.W.2d 603 (1993).

held . . . unless otherwise expressly provided by law." Section 19.81(1) states the public policy of Wisconsin's Open Meetings Law as follows:

> In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.

The statute expressly mandates liberal construction to achieve its purposes. Section 19.81(4). The only exceptions to the requirement of open meetings are those contained in WIS. STAT. § 19.85, and we strictly construe those exceptions in accord with the express public policy of the Open Meetings Law. *See Hodge*, 180 Wis. 2d at 71. The legislature has made the policy choice that, despite the efficiency advantages of secret government, a transparent process is favored.

¶ 7. Milton claims exemption from the Open Meetings Law under § 19.85(1)(e), which allows a closed meeting for the purpose of "[d]eliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session." The circumstances under which a government's competitive or bargaining reasons require a closed session is a matter of first impression before this court. We are therefore required to interpret the statute to give effect to the intent of the legislature, as expressed in the language of the statute. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 8. We are guided, at the outset, by the Open Meetings Law's express public policy of ensuring public

access to the workings of government and its mandate of liberal construction, *see* Wis. Stat. § 19.81, and by case law compelling strict construction of exceptions to the open meetings requirement, *see Hodge*, 180 Wis. 2d at 71. We also turn to the one published Wisconsin case analyzing the exception in Wis. Stat. § 19.85(1)(e), *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 151 Wis. 2d 608, 445 N.W.2d 689 (Ct. App. 1989).[4]

¶ 9. In *Pleva*, Milwaukee World Festival, Inc., entered into a lease agreement with the City of Milwaukee, which required Festival to hold its meetings open to the public pursuant to Wisconsin's Open Meetings Law. *Id.* at 610. After Festival closed some of its budget-planning meetings, invoking Wis. Stat. § 19.85(1)(e), the Journal/Sentinel, Inc., and Bruce Gill brought an open meetings action against Festival. *Id.* The circuit court dismissed the claim, and we reversed. *Id.* We explained that the record "d[id] not reflect the committee's basis for determining that their meetings fell within the exemption delineated in sec. 19.85(1)(e), Stats." *Id.* at 616. We further said that "[m]erely stating that the meetings would involve competitive or bargaining issues is a blanket approach in closing such committee sessions." *Id.* We therefore remanded with instructions for Festival "to establish the nature of the items to be discussed in the meetings so as to justify the finance committee's vote for closure." *Id.*

■

¶ 10. Thus, the burden is on the governmental body to show that competitive or bargaining interests

---

[4] We decline to address the parties' arguments over the various attorney general opinions discussing Wis. Stat. § 19.85(1)(e). Such opinions are not controlling precedent, and we do not find them persuasive here. *See City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 237, 332 N.W.2d 782 (1983).

require closed sessions under Wis. Stat. § 19.85(1)(e). While we agree with Milton that it has not invoked a "blanket approach" by simply asserting that competitive or bargaining reasons require closed meetings without explanation, we do not agree that it has shown that closed sessions were required by competitive or bargaining interests for all of its meetings discussing the proposed ethanol plant.

¶ 11.  In support of its summary judgment motion, Milton submitted an affidavit by Todd Schmidt, Milton's Chief Administrative Officer, listing the reasons that Schmidt suggested to Milton that it close the meetings concerning the proposed ethanol plant until it approved a Developer's Agreement with United Coop. Those reasons were:   (1) Milton had invested millions of dollars creating its tax incremental finance district, to encourage private industrial development in Milton; (2) United Coop had proposed constructing an ethanol plant in Milton, and had requested confidentiality throughout the negotiation process; (3) for part of the negotiation process, Milton was also engaged in negotiation for purchase of private property from Doug Goodger which United Coop sought to purchase for the ethanol plant site; (4) Milton wanted its negotiations with United Coop to remain confidential so that another municipality would not pursue negotiations with United Coop; (5) Milton did not want to disclose its negotiating position to United Coop; and (6) any agreement reached in closed session would have contingencies for public input at a later date.

¶ 12.  CRD contends that the reasons Milton articulated for closing the entirety of its meetings regarding the proposed ethanol plant do not satisfy the

requirements under WIS. STAT. § 19.85(1)(e).[5] We agree, and conclude that Milton's competitive or bargaining reasons did not require closed sessions for the entirety of its meetings discussing the proposed ethanol plant.

¶ 13.  First, we are not persuaded by Milton's argument that United Coop's request for confidentiality required Milton to close all discussions over the proposed ethanol plant. Because Wisconsin's Open Meetings Law dictates that the public have the fullest access to government that is compatible with the conduct of governmental business, WIS. STAT. § 19.81(1), and the exception under WIS. STAT. § 19.85(1)(e) must be strictly construed, *Hodge*, 180 Wis. 2d at 71, we conclude that a private entity's desire for confidentiality does not permit a closed meeting.

■

¶ 14.  The word "require" in WIS. STAT. § 19.85(1)(e) is not defined under the statutes, and we therefore use its common definition. *See Kalal*, 271 Wis. 2d 633, ¶ 45. "Require" is defined as:  "To have as a requisite: NEED"; "To call for as appropriate: DEMAND"; "To impose an obligation on: COMPEL"; and "To command: order." WEBSTER'S II NEW COLLEGE DICTIONARY 942 (1995). The legislature's choice of the word "require" thus connotes its intent to limit the exception under § 19.85(1)(e) to those situations where the government's competitive or

---

[5] CRD also argues that the affidavit of Milton's Chief Administrative Officer was not sufficient to establish its reasons for invoking WIS. STAT. § 19.85(1)(e), and Milton should have instead submitted an affidavit of a member of the City Council. Because we conclude that the reasons articulated in Schmidt's affidavit do not support closing the entirety of the meetings concerning the proposed ethanol plant, we need not decide whether Schmidt was the appropriate individual to make those averments.

bargaining reasons leave no other option than to close meetings. Thus, a government may have a valid reason for *desiring* to close its meetings that nevertheless fails to establish closed meetings are *required.* While a private entity with which the government is negotiating might request confidentiality, and such a request might provide a reason for a government to desire holding closed meetings, that request does not require the government to hold closed meetings to preserve the government's competitive or bargaining interests.[6]

¶ 15.   We are not persuaded by Milton's argument that it was allowed to close all meetings concerning the ethanol plant for fear of losing United Coop to another municipality. There is no indication that holding closed meetings deterred United Coop from seeking a better financial package from some other municipality. United Coop may have wanted to avoid an acrimonious debate about its proposed plant by keeping discussions with Milton secret, but that is not a permissible reason for closing Milton's meetings.

¶ 16.   Milton asserts that keeping its negotiations to purchase land from Doug Goodger secret justified its closed meetings. It asserts that secrecy was necessary to avoid attracting interest in Goodger's land from other potential purchasers. But Goodger was not required to keep the negotiations confidential, and it defies common sense to believe that if he wanted to sell his land, he would not want to receive the best price for it. Possible competition for Goodger's land did not justify closed meetings.

---

[6] Furthermore, we fail to see how attracting the attention of other private entities interested in building an ethanol plant in Milton would disserve Milton's competitive or bargaining interests. Indeed, it seems a municipality's competitive or bargaining interests would benefit from competition for a municipal project.

¶ 17. Moreover, even if secrecy somehow deterred competition from other municipalities, it is not apparent that such a reason would support holding closed meetings. All Wisconsin municipalities are governed by Wisconsin's Open Meetings Law. There is no reason to believe that the free market does not work for ethanol plant siting, resulting in the lowest cost for the ultimate consumers. Permitting the governed to express opinions about prospective purchases may be time consuming, frustrating, counterproductive and might increase costs. But the Wisconsin legislature has decided that complete information regarding the affairs of government is the policy of Wisconsin. We cannot accept the proposition that a governing body's belief that secret meetings will save costs justifies closing the door to public scrutiny.

¶ 18. Milton's argument that it included contingencies in the final approval of the ethanol plant development to allow for public input is also unavailing. Milton has cited no authority, nor have we discovered any, allowing an exception to the requirement of open meetings on the basis of the opportunity for future public input. That Milton fears the possible disruption of its plans is no reason to avoid public debate through secret meetings. Indeed, contentious issues are those most in need of public discussion.

[8]

¶ 19. Finally, we agree with Milton that portions of meetings that would have revealed their negotiation strategy with United Coop or their negotiation strategy for the purchase of land for the ethanol plant site could be closed under WIS. STAT. § 19.85(1)(e).[7] Developing a

---

[7] CRD concedes this point, as well.

negotiation strategy or deciding on a price to offer for a piece of land is an example of what is contemplated by "whenever competitive or bargaining reasons require a closed session." *See* § 19.85(1)(e). However, just because those concerns were present for portions of some of the meetings does not mean the entirety of the meetings fell within the narrow exception under § 19.85(1)(e). Thus, we do not agree that Milton was justified in closing *all* parts of *all* meetings concerning the proposed ethanol plant based on the reasons it has asserted. We therefore reverse and remand for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.